## UNITED BENEFIT LIFE INS. CO. v. KNAPP (FIRST STATE BANK OF TALIHINA, Intervener).

No. 25074.   Nov. 26, 1935.

Dudley, Hyde, Duvall & Dudley, for plaintiff in error.

Carmon C. Harris and Darrough & Foster, for defendant in error and intervener, respectively.

BUSBY, J.   This is an appeal from a judgment of the district court of Oklahoma county, Okla., wherein defendant in error recovered judgment in the sum of $1,000 with interest from September 25, 1931. The interests of the defendant in error and intervener are identical so far as this appeal is concerned, and the parties will be referred to as they appeared in the court below.

This action is based upon a policy of life insurance issued by the defendant company upon the life of one Elmo Knapp, who was the son of plaintiff. It appears that on July 6, 1931, Elmo Knapp made application with an agent of defendant company for a

$1,000 life insurance policy, naming plaintiff as beneficiary. The application was upon a "nonmedical" form and contained numerous questions as to condition of health, in lieu of medical examination. In answering these questions applicant stated that he was in good health at that time. He also agreed in the application that "there shall be no liability hereunder until a policy shall be issued, and delivered to me in good health."

The agent carried the application around with him for several days, and upon payment of the initial premium, mailed it to the company, changing the date from July 6th to July 16, 1931. Five days later, on July 21, 1931, Elmo Knapp went to the hospital, where it was ascertained that he was suffering from lymphatic leukemia, and was in a very serious condition. He was given treatment and several blood transfusions. but died from this disease on September 14, 1931. The evidence is contradictory as to when the policy was delivered, but there was introduced in evidence a receipt, not dated, but signed by Elmo Knapp with the statement thereon that "I certify that at this date I am in good health." The plaintiff contended that the policy was delivered by the soliciting agent of the company to Elmo Knapp on the street before he went to the hospital on July 21, 1931, and that he was never aware of any serious disease until after he had received it. On the other hand, the defendant contended that the policy was not mailed from the home office until August 3, 1931, which was about two weeks after he entered the hospital, and that he had known for six weeks prior thereto that he was ill.

The jury rendered a verdict for plaintiff, and the defendant seeks reversal upon two grounds: First, that the insured procured the policy by fraud in that he misrepresented the condition of his health in the application; and, second, that the insured was not in good health at the time he received the policy, and, under the terms of the contract, no liability ever existed.

We will consider these propositions in the order named. In making a contract of insurance it is the duty of the person applying for insurance, upon a risk of whatever kind, to give to the insurance company all of the necessary information concerning the risk as will be of use in estimating its character and in determining whether or not to assume it. This duty is the natural outgrowth of the nature of the insurance business. Thus arises the rule that the un-

truth of any material representation relied on by the insurance company in making the contract will avoid the contract, wholly irrespective of the intent, whether innocent or fraudulent, with which such misrepresentation was made. Vance, Insurance (2d Ed.) pp. 359-360, and cases cited therein. But it is important to note that this rule applies only to representations of previous and present conditions and past events, which are susceptible of exact knowledge and correct statement. For convenience these representations are often termed "objective representations." The courts have reached a different result in the application of this general rule to the other type of representations, commonly called "subjective representations." These are statements not susceptible of present actual knowledge, but amount only to statements of intention, opinion or belief. As to subjective representations, the good faith of the insured furnishes the criterion of truth, for they can be false only when the intention, opinion or belief, as stated, is not honestly entertained. Statements as to the condition of the health of the applicant are of this latter type. The subject of the opinion in the case at bar was the exact state of health of the applicant, but the subject of the representation was the opinion of the applicant. Therefore, if he was of the honest opinion that he was in good health at the time he made the application, irrespective of his actual state of health, the representation would not be false, and, consequently, this contract would not be voidable under the general rule stated above, that a false material representation renders an insurance contract voidable, whether made innocently or fraudulently. Vance, Insurance (2d. Ed.) pp. 366-369, and cases cited therein.

In determining if the statement of the applicant is an honest opinion, we must also keep in mind the rule that representations are construed liberally in favor of the insured, and that they are only required to be substantially true. In Vance on Insurance (2d Ed.) p. 377, the author states:

"As heretofore shown, the statement of an erroneous opinion, belief or information, or of an unfulfilled intention, will not avoid the contract of insurance, unless fraudulent. Hence, the courts are inclined to construe a statement as being one of opinion whenever it is possible to do so, in order to prevent the forfeiture of policies by reason of innocent mistakes. Thus statements of value, as already said, are held but expressions of opinion; and so are representations as to the health of the insured, so far as

latent diseases are concerned, although there is some authority to the contrary."

Again, on page 376, the author states:

"These cases are also illustrations of the general rule that representations are not required to be literally true, as are warranties, but that substantial truth only is necessary."

Also, on page 377 of the same book, the author further states:

"A statement that the applicant is in good health is not held to mean that he is in perfect health, but that he is not aware of any disease of such a serious nature as to impair his health, permanently."

In the application of these well-settled rules of insurance law to the case at bar, we are met with the question: Was Elmo Knapp aware that he had a disease of such a serious nature as would permanently impair his health when he made the application on July 6, 1931? The jury apparently believed that he did not know that he had such a disease, and considering the testimony in regard to the latent and insidious nature of lymphatic leukemia, we cannot say that the verdict in this respect was not supported by any evidence.

Considering the second proposition, however, the facts present a slightly different situation, but under the authorities presented by both plaintiff and defendant, the test to be used is the same. The contract provided that there would be no liability on the part of the insurance company until the policy was delivered to the insured while he was in good health. That such a provision is not considered as a warranty or a condition precedent, it reflected by the case of Mid-Continent Life Insurance Company v. House, 156 Okla. 285, 10 P. (2d) 718, in which the court said:

"There is authority to the contrary, but we are of the opinion that such a provision in the contract in question in reference to the delivery of the policy, is for the purpose of protecting the insurance company against a risk which may arise between the time when the company has made its examination of the insured, and the time of the issuance and delivery of the policy, and that it was never intended that such a provision should constitute a warranty or a condition precedent to a binding contract of insurance. * * *"

Thus the statement made by the applicant when he received the policy was a representation which would avoid the policy if material and false, and being a statement of opinion, is not considered false unless made with fraudulent intent or with definite knowledge that the opinion itself is untrue, as heretofore pointed out. That the provision in the policy requiring the insured to be in good health at the date of delivery means that he is not aware of any serious ailment, whatever it may be, is further supported by the case of Mutual Life Insurance Company v. Muckler (Ore.) 21 P. (2d) 804, in which the court said:

"Insurer was liable under policy requirement of delivery during applicant's continuance in good health, where insured's representations that he was in good health were made in good faith, though unknown to him insured then had chronic leptomeningitis, whereof he died, and there was no change in insured's condition between date of application and date of delivery of policy."

Therefore, under the authorities cited interpreting the legal effect of this provision in the insurance contract, we are again confronted with the question: Was Elmo Knapp aware that he had a disease of such a serious nature as would permanently impair his health when the policy was delivered to him? The jury again found that he was not, and in determining whether or not that verdict is supported by any competent evidence, we must investigate the record on one question of fact: Was the policy delivered before he went to the hospital on July 21, 1931, or after? For the evidence is clear that after Elmo Knapp went to the hospital he must have known that he was suffering from some serious disease, although, of course, he might not have known what it was. Conversely he may not have known prior to that time that he was afflicted with a serious ailment for any appreciable length of time before his entry into the hospital. Upon entering the hospital his condition was such that he could scarcely walk unassisted and his body was discolored. The hospital records show that he received ten blood transfusions between July 22 and August 15, 1931. We agree with the case of New York Life Insurance Co. v. Carroll, 154 Okla. 244, 7 P. (2d) 440, cited by the plaintiff, to the effect that by bad faith we mean an actual intent to deceive and not an honest mistake. Also, we agree with the holding in that case that the question of this intent to deceive is one for the jury.

The testimony of the soliciting agent was that the policy was delivered to Elmo Knapp on the street in Oklahoma City, and

at a time when the insured may not yet have been aware that he was suffering from any serious ailment. This is in direct conflict with the testimony of defendant that the policy was mailed to the state manager in Oklahoma City on August 3, 1931, mailed to the soliciting agent in the same city on August 5, 1931, and delivered to Elmo Knapp immediately. The hospital records reveal that on August 6, 1931, the day on which, according to defendant's testimony, he probably received the policy, Elmo Knapp was given a blood transfusion of 250 cc. of blood, and it is highly improbable that he was out of the hospital and on the street in Oklahoma City. This fact, coupled with the negative testimony of the hospital attendants that their records did not show that the patient left after he was first admitted, clearly shows that if the policy was in fact delivered on the street, it was before July 21, 1931.

The testimony of the soliciting agent supporting the view that the policy was delivered in Oklahoma City before the 21st day of July is corroborated by the testimony of the aunt of Elmo Knapp, who informed the court and jury that the policy was read to her by the soliciting agent before the 21st day of July. This testimony is in sharp conflict with the testimony of a number of employees of the insurance company, which testimony was brought before the trial court by deposition.

The jury by their verdict resolved this issue of fact in favor of the plaintiff. It has long been the established law of this state that the verdict of a jury deciding an issue of fact where the evidence is conflicting will not be disturbed by this court when there is any competent evidence to sustain the verdict. See Anderson, Ex'r, v. Cardwell, 130 Okla. 92, 265 P. 627; Blumenfeld et al. v. Mann, 126 Okla. 64, 258 P. 918. Under this rule it is not within our province to review and weigh the evidence for the purpose of determining whether our judgment corresponds with that of the jury.

The judgment of the trial court is therefore affirmed.

McNEILL, C. J., and RILEY, PHELPS, and CORN, JJ., concur.