NATIONAL CASUALTY COMPANY, DETROIT, MICHIGAN, Plaintiff in Error,

v.

FIRST NATIONAL BANK and TRUST COMPANY, Executor of the Estate of Dr. L. C. Trotter, Deceased, Defendant in Error.

No. 37463.

Supreme Court of Oklahoma.

April 23, 1957.

Rucker, Tabor & Cox, Dennis J. Downing, Tulsa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, executor of the estate of a deceased Tulsa dentist, Dr. L. C. Trotter, instituted this action against plaintiff in error, to recover a certain sum of money as monthly benefits for the period of said dentist's disability before his death, allegedly due under the terms of a group insurance contract plaintiff in error entered into with said dentist, as a member of the American Dental Association. At the close of the evidence, the trial court sustained the executor's motion for a directed verdict in the sum of $1,773.34; and, after entry of judgment in accord with such verdict, the defendant insurance company perfected the present appeal. Our continued reference to the parties will be by their trial court designations.

The substance of the alleged defense to the action was that defendant's issuance of the insurance contract, or policy, was procured by fraud, which consisted of misrepresentations Dr. Trotter allegedly made concerning his health and medical history in applying for the policy, which misrepresentations were allegedly relied upon by defendant in issuing the policy.

Dr. Trotter's application for the policy was dated April 1, 1954. The policy was thereafter issued, and became effective one month later. Trotter, hereinafter referred to as the testate, became disabled June 23, 1954, by reason of the illness from which he never recovered.

In the present appeal, there is no dispute about the amount of plaintiff's recovery, there being no contention that if defendant was liable on the contract at all, the verdict is excessive. As above indicated, however, it is earnestly contended that, on the basis of the evidence, the insurance contract was vitiated and rendered unenforceable by the testate's fraudulent misrepresentations of the condition of his health and medical history on his application for the contract, or policy. These claimed misrepresentations consisted of the testate's writing the word "yes" in answer to the first, and the word "no" as his answer to the second and third of the following questions printed on the application form:

"1. To the best of your knowledge and belief, are you in good health and free from any physical impairment or disease?

"2. To the best of your knowledge and belief have you within 10 years had any injury, sickness or physical condition requiring a doctor's care or a surgical operation?

"3. Have you within 10 years been advised to have a surgical operation which has not been performed?"

The diagnosis, and exact nature, of the testate's illness was never established at the trial. More than one witness testified that for some unspecified time before he applied for the insurance, he had coughing spells. One witness was permitted to testify, in substance, that the testate's wife told her this worried her so she could not sleep at night. The testate's brother, Dr. Virgil H. Trotter, testified that as early as November or December, 1953, the testate complained of his back hurting him, and this witness' wife testified the testate thought he had arthritis. The brother further testified that he started talking to the testate in November, 1953, about obtaining medical attention; that at that time the testate was "going to" a Dr. O, and was taking "some kind" of pills he told the witness "would ease the pain"; that in the winter of 1953–54, the witness and the testate wanted to go to a mid-winter meeting of orthodontists at Chicago, and in attempting to persuade testate to seek further medical advice, he asked him to go to Mayo's, suggesting that he go directly there, after the meeting, "to see if he could not get his health back"; but that the testate "did not feel like going * * *". This witness' wife testified that after the time of the orthodontists' meeting, or in February, 1954, the testate told her husband that "he was going to Mayo's because * * * the doctors here evidently could not find his trouble in his back." The testate's brother also testified that the testate consulted a Dr. M, but the witness did not say whether this occurred before or after he applied for the insurance involved herein. Dr. G, an orthopedic surgeon, testified that he examined the testator on March 18th and April 6th, 1954; and Dr.

B, a physician and radiologist, testified he saw the testate, "as a patient", on April 1, 1952, July 29th and October 27th, 1953, and that in March, 1954, he saw him on the 3rd and 9th, respectively, and beginning on the 19th, he saw him daily to and including the 29th of that month.

Defendant takes the position that the above-described, undisputed testimony was sufficient, in itself, to show that the testate's answers to at least the first two above-quoted questions on the application were false and constituted misrepresentations. On the other hand, plaintiff argues that the evidence did not specifically show the complaint or ailment the testate's doctors "saw" or treated him for, or that he was informed, or knew, of any serious impairment of his health. Plaintiff's position seems to be that on the basis of this hypothesis, and the undisputed fact that when the testate applied for the insurance, he was carrying on his practice of dentistry, daily, and engaging in his other normal activities, and continued to do so for almost two months after the policy was issued, the evidence was insufficient, under the principles adhered to and discussed in cases like Farmers & Bankers Life Ins. Co. v. Lemon, 204 Okl. 218, 228 P.2d 634, Farmers & Bankers Life Ins. Co. v. Baxley, 202 Okl. 531, 215 P.2d 941, United Benefit Life Ins. Co. v. Knapp, 175 Okl. 25, 51 P.2d 963, and others, to discharge defendant's burden of proving that the testate's answers were misrepresentations. As we view the matter, it is unnecessary to decide whether the evidence was sufficient on that question to require its submission to the jury for determination, in view of the absence of any evidence to establish its necessary corollary, viz.: reliance of the defendant upon said representations. Both the contract of insurance and the application therefor in this case are identical in form with the contract and application in Adams v. National Casualty Co., Okl., 307 P.2d 542. There it was noted that there were no provisions in the certificate of insurance, nor in the application

therefor, stating that the insurance was issued in reliance on the insured's statements. And, in the present case, as in the cited one, there was no testimony "to support a conclusion that the policy was issued in reliance" upon said statements. As there was no proof of reliance upon the application in this case, the trial court correctly sustained plaintiff's motion for a directed verdict, regardless of the sufficiency, or insufficiency, of the evidence as to the testate's alleged misrepresentations.

See Stokes v. Rodman, 186 Okl. 617, 99 P.2d 499, and Homeland Realty Co. v. Robison, 39 Okl. 591, 136 P. 585.

Said court's judgment is therefore affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

WELCH, C. J., concurs in result.