The ASSOCIATION OF the BAR OF the CITY OF NEW YORK, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

1250, Docket 88–4001.

United States Court of Appeals, Second Circuit.

Argued June 10, 1988.

Decided Sept. 27, 1988.

Bruce R. Ellisen, Dept. of Justice, Washington, D.C., (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Robert S. Pomerance, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellant.

M. Bernard Aidinoff, New York City (Sullivan & Cromwell and Stephen A. Zorn, New York City, of counsel), for petitioner-appellee.

Before VAN GRAAFEILAND, MAHONEY, Circuit Judges, and METZNER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Section 501(c)(3) of the Internal Revenue Code provides for the exemption from federal income tax of organizations operated exclusively for charitable or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual. To qualify under that section, however, an organization must not "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." I.R.C. § 501(c)(3), *as amended by* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10711, 101 Stat. 1330, 1330–464 (1987).

The Commissioner of Internal Revenue appeals from a decision of the United States Tax Court, *Association of the Bar v. Commissioner,* 89 T.C. 599, [1987 Transfer Binder] Tax Ct.Rep. (CCH) No. 44,199 (Sept. 17, 1987), in which the Association of the Bar of the City of New York was held to qualify as a tax-exempt charitable and educational organization within the meaning of section 501(c)(3). The Tax Court reached this decision by holding that the Association does not engage in forbidden political activity. For the reasons that follow, we reverse.

The Association was incorporated in 1871 by Special Act of the New York Legislature

for the purposes of cultivating the science of jurisprudence, promoting re-

forms in the law, facilitating the administration of justice, elevating the standard of integrity, honor and courtesy in the legal profession and cherishing the spirit of brotherhood among the members thereof.

1871 N.Y.Laws 819, amended 1924 N.Y. Laws 134. In order to carry out these purposes, the Association engages in a variety of activities, many of which are conducted through the Association's more than fifty standing committees.

One of the Association's significant activities is the rating of candidates for both appointive and elective judgeships at the municipal, state and federal level. This task is assigned to the Association's Committee on the Judiciary. The Committee considers a candidate's professional ability, experience, character, temperament and the possession of such special qualifications as the Committee deems desirable for judicial office. It then rates the candidate as either "approved", "not approved", or "approved as highly qualified". The ratings are communicated to the public in the form of press releases and are published in The Record of the Association of the Bar of the City of New York, a regular publication of the Association which is sent out to the Association's members and approximately 120 other subscribers, including libraries and law schools. A "not approved" rating may be accompanied on occasion by a short statement explaining the reasons for the rating.

In 1982, the Association applied to the Commissioner for recognition as a charitable and educational organization exempt from tax under section 501(c)(3). Although the Association already is exempt from federal income taxes under section 501(c)(6), qualifying under section 501(c)(3) would give additional tax advantages to the Association and persons who contribute to it. For example, a section 501 (c)(3) organization is eligible to receive charitable contributions which are tax-deductible to the donor for federal income, estate, and gift tax purposes. *See* 26 U.S.C. §§ 170(a)(1),

---

* Senior District Judge of the Southern District of New York, sitting by designation.

(c)(2)(D), 2055(a)(2), 2106(a)(2)(A)(ii) and 2522(a)(2).

The Commissioner denied the Association's application on the ground that the procedure followed by the Association in the rating of candidates for elective judicial office constituted intervention or participation in political campaigns on behalf of candidates for public office. Following this adverse determination, the Association brought an action in Tax Court for a declaratory judgment that it qualifies as a section 501(c)(3) organization. That Court, by a vote of ten to six, held that the Association's conduct in question does not constitute prohibited political activity and that the Association therefore qualifies as a section 501(c)(3) organization. We disagree.

Canon 8 of New York's Code of Professional Responsibility provides "A Lawyer Should Assist in Improving the Legal System." N.Y. Code of Professional Responsibility Canon 8, *reprinted in* N.Y. Jud. Law App. (McKinney 1975). Ethical Consideration 8–6 elaborates on this provision as follows:

> Judges and administrative officials having adjudicatory powers ought to be persons of integrity, competence, and suitable temperament. Generally, lawyers are qualified, by personal observation or investigation, to evaluate the qualifications of persons seeking or being considered for such public offices, and for this reason they have a special responsibility to aid in the selection of only those who are qualified. It is the duty of lawyers to endeavor to prevent political considerations from outweighing judicial fitness in the selection of judges. Lawyers should protest earnestly against the appointment or election of those who are unsuited for the bench and should strive to have elected or appointed thereto only those who are willing to forego pursuits, whether of a business, political, or other nature, that may interfere with the free and fair consideration of questions presented for adjudication. (footnotes omitted)

N.Y.Code of Professional Responsibility EC 8–6, *reprinted in* N.Y.Jud.Law App. (McKinney 1975).

There can be little question that lawyers take seriously the obligation imposed upon them by this Canon and Ethical Consideration. Bar Associations across the State follow the practice of rating candidates for judicial office, and it is clearly in the public interest for them to do so. *See Dulles v. Johnson*, 273 F.2d 362, 367 (2d Cir.1959), *cert.denied*, 364 U.S. 834, 81 S.Ct. 54, 5 L.Ed.2d 60 (1960). The issue in the instant case, however, is not whether Bar Associations serve the public by rating candidates and publicizing their rating. It is whether they may do so and still claim tax exemptions which are not available under section 501(c)(3) to organizations which "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."

The Association's by-law which describes the functions of the Committee on the Judiciary quite obviously conforms closely to Ethical Consideration 8–6. At the time the Association applied for section 501(c)(3) recognition, the by-law read in pertinent part as follows:

> The [C]ommittee [on the Judiciary] shall endeavor to secure the nomination, election, certification, or appointment of qualified candidates, to prevent the nomination, election, certification, or appointment of unqualified candidates, and to prevent political considerations from outweighing fitness in the selection of candidates for judicial office or for any other office connected with the administration of justice in the Court of Appeals of the State of New York, the Court of Claims of the State of New York, state and city courts in the City of New York, the United States Court of Appeals for the Second Circuit, and the United States District Courts for the Southern and Eastern Districts of New York, or for the office of District Attorney of any county within the City of New York or of United States Attorney in the Southern and Eastern Districts of New York. The committee shall consider the fitness of

candidates proposed for nomination, appointment, or certification, or nominated for election to any such office, and may confer with any person or group with respect to any such candidate. The committee may prepare a list or lists of persons qualified to hold any such office and may confer with any person or group with respect thereto.

The Association indicated in its application that, if it was granted a conditional exemption, it would submit a proposed amended by-law to its members that would omit all reference to endeavors to "secure" or "prevent" the election of candidates. However, since it appears that the Committee's ratings would be publicized in the same manner under the proposed amended by-law as they were under the then-existing by-law, the issue whether such ratings and publications constitute prohibited campaign activity would continue to exist.

The findings of the Tax Court on this issue are ambivalent. The Court says that "[t]he ratings do not support or oppose the candidacy of any particular individual or recommend that the public vote for or against a specific candidate." *Association of the Bar v. Commissioner, supra,* 89 T.C. at 609–10, [1987 Transfer Binder] Tax Ct.Rep. (CCH) at 3646. In almost the same breath, however, the Court states that it is "obvious that the ratings are published with the hope that they will have an impact on the voter." *Id.* Studies of Bar Associations' judicial ratings indicate that they do influence the voting public. *See* Goldstein, *Bar Poll Ratings as the Leading Influence on a Non–Partisan Judicial Election,* 63 Judicature 377 (1980); *see also Lawyers' Ratings Win Election,* Rochester Democrat and Chron., Nov. 5, 1981, at 5B (Monroe County Bar Association's statistical summary of its rating program). Certainly, a candidate for judicial office who receives a "not approved" Bar Association rating will believe that this is so.

As is evident from legislative history, government subsidization of political activity has been a matter of concern to Congress from the time Judge Learned Hand wrote that "[p]olitical agitation ... however innocent the aim ... must be conducted without public subvention...." *Slee v. Commissioner,* 42 F.2d 184, 185 (2d Cir. 1930); *see Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959). "A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income." *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 544, 103 S.Ct. 1997, 2000, 76 L.Ed. 2d 129 (1983). When Congress included tax exemptions to charitable and educational organizations in the Revenue Act of 1934, it excepted from exemption those organizations that devote a substantial part of their activities to "carrying on propaganda, or otherwise attempting, to influence legislation." Ch. 277, § 101(6), 48 Stat. 680, 700. That provision remains intact in present section 501(c)(3).

Section 501(c)(3) of the Internal Revenue Code of 1954 added to the group of excepted organizations those which participate or intervene in the political campaign of a candidate for public office. Pub.L. No. 83–591, § 501(c)(3), 68A Stat. 1, 163. "This provision merely expressly stated what had always been understood to be the law. Political campaigns did not fit within any of the specified purposes listed in the section." 9 Mertens, *Law of Federal Income Taxation* § 34.05 (rev. vol. 1983) at 22; *see Haswell v. United States,* 500 F.2d 1133, 1140, 205 Ct.Cl. 421 (1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *Herbert E. Fales* 9 B.T.A. 828 (1927). To remove any doubt as to the scope of this exception, Congress again amended section 501(c)(3) in 1987 to ban participation both "on behalf of" and "in opposition to" candidates for public office. Pub.L. No. 100–203, § 10711, 101 Stat. 1330, 1330–464. The House Report that accompanied this Bill states that "[t]he prohibition on political campaign activities ... reflect[s] Congressional policies that the U.S. Treasury should be neutral in political affairs...." H.R.Rep. No. 391, 100th Cong., 1st Sess. 1621, 1625 (1987), U.S.Code Cong. & Admin.News 1987, pp. 2313–1, 2313–1201, 2313–1205; *see also* H.R.Rep. No. 413, 91st Cong., 1st Sess. 31–34;

S.Rep. No. 552, 91st Cong., 1st Sess. 46–49 (interpreting section 501(c)(3) to mean that "no degree of support for an individual's candidacy for public office is permitted").

The Association suggests several reasons why the proscription against participation or intervention in the campaigns of judicial candidates does not apply to its rating procedures. It argues, and we assume this to be so, that it evaluates judicial candidates on a nonpartisan basis. However, the statute and pertinent regulations thereunder are not limited in their application to the partisan campaigns of candidates representing recognized political parties. " 'Nonpartisan,' as used in the statute and regulations, need not refer to organized political parties." *Haswell v. United States, supra,* 500 F.2d at 1144. One need not be a party nominee to be a candidate for public office. *Matter of Burns v. Wiltse,* 200 Misc. 355, 357, 108 N.Y.S.2d 62 (1951). "The term 'candidate for public office' means an individual who offers himself, or is proposed by others, as a contestant for an elective public office...." Treas.Reg. (26 C.F.R.) 1.501(c)(3)–(1)(c)(3)(iii). Moreover, one may be a candidate without running an organized political campaign. "[A] campaign for a public office in a public election merely and simply means running for office, or candidacy for office, as the word is used in common parlance and as it is understood by the man in the street." *Norris v. United States,* 86 F.2d 379, 382 (8th Cir.1936), *rev'd on other grounds,* 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808 (1937). Indeed, a candidate for judicial office is limited in his political campaign activities by Canon 7 of his own Code of Judicial Conduct. N.Y.Code of Judicial Conduct Canon 7, *reprinted in* N.Y. Jud.Law App. (McKinney 1975). A candidate who receives a "not qualified" rating will derive little comfort from the fact that the rating may have been made in a nonpartisan manner.

The Association also asserts that its "rating activity involves merely the collection and limited dissemination of objective data." Appellee's Brief at 10. We disagree. Objective data are data that are independent of what is personal or private in our apprehension and feelings, that use facts without distortion by personal feelings or prejudices and that are publicly or intersubjectively observable or verifiable, especially by scientific methods. *Webster's Third New International Dictionary* 1556 (1971). Objective representations have been described judicially as "representations of previous and present conditions and past events, which are susceptible of exact knowledge and correct statement." *United Ben. Life Ins. Co. v. Knapp,* 175 Okla. 25, 26, 51 P.2d 963, 964 (1935). A belief that something is so does not make it so. *Mayer Tank Mfg. Co. v. Commissioner,* 126 F.2d 588, 591 & n. 4. (2d Cir.1942). *See also Hayes v. Gardner,* 376 F.2d 517, 520 (4th Cir.1967) (objective medical facts are the clinical findings of physicians devoid from their opinions as to the significance of the findings). A representation that a candidate is a lawyer or a judge is a readily provable statement of objective fact. A representation that a candidate is able and has proper character and temperament is simply a subjective expression of opinion. The Tax Court recognized quite correctly that "ratings, by their very nature, necessarily will reflect the philosophy of the organization conducting such activities," and they are simply expressions of "professional opinion" concerning the candidates' qualifications. *Association of the Bar v. Commissioner, supra,* 89 T.C. at 610, [1987 Transfer Binder] Tax Ct.Rep. (CCH) at 3646.

Published expressions of such opinion, made with an eye toward imminent elections, are a far cry from the revenue rulings upon which the Association relies. *See, e.g.,* 80–282, where, in holding that the publication of a newsletter by an organization otherwise qualifying for section 501(c)(3) exemption did not constitute proscribed political activity, the IRS emphasized the following factors:

1. "[T]he voting records of all incumbents will be presented;"

2. "[C]andidates for reelection will not be identified;"

3. "[N]o comment will be made on an individual's overall qualifications for public office;"

4. "[N]o statements expressly or impliedly endorsing or rejecting any incumbent as a candidate for public office will be offered;"

5. "[T]he organization will not widely distribute its compilation of incumbents' voting records;"

6. "No attempt will be made to target the publication toward particular areas in which elections are occurring nor to time the date of publication to coincide with an election campaign."

The inapplicability of these criteria to the activities of the Association is readily apparent. Indeed, the Association concedes that it is attempting to "ensure" that candidates whom it considers to be "legally and professionally unqualified" are not elected to office. Appellee's Brief at 8. In pursuing this activity, the Association falls clearly within the definition of an "action" organization, *i.e.*, one that "participates or intervenes, directly or *indirectly*, in any political campaign on behalf of or in opposition to any candidate for public office." Treas.Reg. (26 C.F.R.) 1.501(c)(3)–1(c)(3)(iii) (emphasis supplied). *See* Rev.Rul. 67–71.

We note in passing that, except for an occasional attempt to justify a "not qualified" rating, no reasons are given for the ratings assigned by the Association. Although we see no need to reach this issue, we note the possibility of a conflict between this procedure and Treas.Reg. (26 C.F.R.) 1.501(c)(3)–1(d)(3)(b), which holds that advocated viewpoints unaccompanied by sufficient pertinent facts to permit members of the public to form their own independent opinions, cannot be considered educational in nature. *See Association of the Bar v. Commissioner, supra*, 89 T.C. at 612–18, [1987 Transfer Binder] Tax Ct. Rep. (CCH) at 3647–50 (Chabot, J., dissenting) (Parker, Cohen, Clapp, Jacobs and Wright, JJ., concurring in the dissent).

Finally, the Association contends that the phrase "substantial part of its activities" as used in the proscription against the influencing of legislation should be carried over into the proscription against participating in any political campaign. "The short answer [to this argument] is that Congress did not write the statute that way." *United States v. Naftalin*, 441 U.S. 768, 773, 99 S.Ct. 2077, 2082, 60 L.Ed.2d 624 (1979); *see also Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983). As above noted, the exception from section 501(c)(3) exemption of an organization that participates in political campaigns was added to the section some twenty years after the exception based on the influencing of legislation. Had Congress intended the added exception to apply only to those organizations that devote a substantial part of their activity to participation in political campaigns, it easily could have said so. It did not. Indeed, since it is most unlikely as a practical matter that any charitable organization would devote a substantial part of either its activity or its budget to the sporadic and relatively inexpensive rating of candidates for public office, the interpretation of section 501(c)(3) urged by the Association would make this portion of section 501(c)(3) substantially meaningless. Congress did not intend it to be so. "[A]lthough the present provisions of Section 501(c)(3) permit some degree of influencing legislation by a Section 501(c)(3) organization, it provides that no degree of support for an individual's candidacy for public office is permitted." H.R.Rep. No. 413, 91st Cong., 1st Sess. 32 (1969); S.Rep. No. 552, 91st Cong., 1st Sess. 47 (1969). "It should be noted that exemption is lost ... by participation in *any* political campaign on behalf of *any* candidate for public office. It need not form a *substantial* part of the organization's activities." *United States v. Dykema*, 666 F.2d 1096, 1101 (7th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 861 (1982); *see Hutchinson Baseball Enterprises, Inc. v. Commissioner*, 696 F.2d 757, 760 (10th Cir.1982).

Needless to say, the members of this panel, whose combined years of Bar Association membership total well over a century, empathize with the efforts of such Associations to improve the administration of justice. We recognize, however, that it is not

within our province to grant Bar Associations a tax exemption that Congress has not seen fit to grant. "Courts should not 'rewrite a statute because they might deem its effects susceptible of improvement.'" *McLaughlin v. Lindemann*, 853 F.2d 1307, 1310 (5th Cir.1988) (quoting *Badaracco v. Commissioner*, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984)).

The decision of the Tax Court is reversed.