**FIRSTIER MORTGAGE COMPANY, also known as Realbanc, Inc., Plaintiff–Appellant,**

v.

**INVESTORS MORTGAGE INSURANCE COMPANY, Defendant–Appellee.**

Nos. 89–6042, 89–6128, 89–6145 and 89–6150.

United States Court of Appeals, Tenth Circuit.

April 23, 1991.

Jack S. Dawson (Janice M. Dansby and James A. Scimeca, also of Miller, Dollarhide, Dawson & Shaw, with him on the briefs), Oklahoma City, Okl., for plaintiff-appellant.

Gregory F. Pilcher (Eric S. Gray, also of Roberts, Gray, Goresen & Moriarty, with him on the briefs), Oklahoma City, Okl., for defendant-appellee.

Before LOGAN, SETH and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Firstier Mortgage Company (Firstier) appeals a district court grant of summary judgment in favor of Investors Mortgage Insurance Company (IMI); and a related award of attorney's fees to IMI. We affirm both judgments.

Firstier brought a diversity action challenging IMI's alleged bad faith failure to pay claims on eight private mortgage insurance policies underwritten by IMI. On January 26, 1989, the district court announced from the bench that it was granting IMI's motion for summary judgment. On February 8, 1989, Firstier filed a notice of appeal from that ruling. Thereafter, on March 3, 1989, the district court issued findings of fact and conclusions of law in support of its earlier ruling and entered judgment in favor of IMI. *See Firstier Mortgage Co. v. Investors Mortgage Ins. Co.*, 708 F.Supp. 1224 (W.D.Okl.1989).

A panel of this court dismissed Firstier's appeal for lack of jurisdiction, holding that the January 26 ruling was not a final decision appealable under 28 U.S.C. § 1291. *See Firstier Mortgage Co. v. Investors Mortgage Ins. Co.*, No. 89-6042, 1989 WL 181016 (10th Cir. Sept. 26, 1989). The United States Supreme Court reversed and remanded, however, holding that Fed.R. App.P. 4(a)(2) "permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment ... when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." *Firstier Mortgage Co. v. Investors Mortgage Ins. Co.*, —— U.S. ——, 111 S.Ct. 648, 653, 112 L.Ed.2d 743 (1991) (emphasis in original). Accordingly, Firstier's appeal on the merits, No. 89-6042, is reinstated and is now properly before us.

By an order of this court dated March 7, 1991, Firstier's merits appeal, No. 89-6042, was consolidated with three related appeals: Nos. 89-6128, 89-6145, and 89-6150. The Supreme Court's determination that Firstier's February 8, 1989 notice of appeal was timely filed moots two of those appeals: (1) No. 89-6145—another appeal on the merits filed by Firstier after the district court formally entered its findings of fact and conclusions of law on March 3, 1989; and (2) No. 89-6150—IMI's challenge to a district court order extending the time for Firstier to file the appeal that became No. 89-6145. We therefore dismiss these appeals, treating the parties' briefs on the merits in No. 89-6145 as applicable to No. 89-6042. The other related appeal, No. 89-6128, is Firstier's challenge to an award of attorney's fees under Okl.Stat.Ann. tit. 36, § 3629. This appeal is properly before

us and will be considered along with Firstier's original merits appeal.

## I

The facts are fully set forth in the district court's Memorandum Opinion. *See Firstier*, 708 F.Supp. at 1224. We here summarize only those facts relevant to our disposition.

■ In 1983, Firstier financed eight first mortgage loans on eight duplexes located in Elk City, Oklahoma. Firstier applied for and received mortgage loan insurance from IMI on each of these loans. Each insurance application package contained, *inter alia*, an Affidavit of Purchaser and Vendor. Each of these affidavits stated that the total purchase price of the property involved was $94,000, that the borrower had a cash equity of $18,800, and that the first mortgage amount was $75,200. These figures yield a loan-to-value ratio of eighty percent. The district court found, however, that none of the purchasers made any down payment, that the true purchase price of each duplex was $75,200, and that the true loan-to-value ratio was therefore one hundred percent. The court found that these misrepresentations voided the mortgage loan insurance policies under Okl. Stat.Ann. tit. 36, § 3609, which at the relevant time provided as follows:

> "All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not

prevent a recovery under the policy unless:

1. Fraudulent; or
2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." [1]

The court found that the misrepresentations here satisfied each of the three subsections of § 3609. It specifically noted, however, that its conclusion that the misrepresentations were fraudulent under subsection (1) was not necessary to its holding, *see Firstier*, 708 F.Supp. at 1230, because, even if the misrepresentations were made innocently, the documents Firstier submitted to IMI "contained misrepresentations that were material to the risk assumed by IMI." *Id.* at 1231. In a separate order, the court granted IMI's motion for attorney's fees. Firstier now appeals both rulings.

## II

■ In its merits appeal, Firstier challenges the court's award of summary judgment in favor of IMI. Firstier vehemently attacks the court's finding that the policies were void for fraud under § 3609(1), and suggests, citing *Coppin v. Shelter Mut.*

---

1. Effective November 1, 1989, § 3609 was amended to make the text quoted above become subsection "A." and to add the following paragraph:

> "B. Subsection A of this section shall not be applicable to mortgage guaranty insurance, as hereinafter defined. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under a policy of mortgage guaranty insurance unless material and fraudulent. As used herein, the term 'mortgage guaranty insurance' means a form of casualty or surety insurance insuring lenders against financial loss by reason of nonpayment of principal, interest and other sums agreed to be paid under the terms

of any note, bond or other evidence of indebtedness secured by a mortgage, deed of trust or other instrument constituting a lien or charge on real estate which contains a residential building or a building designed to be occupied for industrial or commercial purposes."

Because there is no indication of a legislative intent to apply this amendment retroactively, it has no application to this case. *See, e.g., Rea v. Wichita Mortgage Corp.*, 747 F.2d 567, 571 (10th Cir.1984) ("In Oklahoma, statutes are considered to have prospective operation only unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used.").

*Ins. Co.,* 742 P.2d 594, 597 (Okla.Ct.App. 1987), that Oklahoma courts would not apply § 3609(3) as an independent basis for denial of coverage. We do not consider these arguments, however, because we choose to affirm on the basis of § 3609(2) only, which operates to void policies when misrepresentations "[m]aterial either to the acceptance of the risk, or to the hazard assumed by the insurer" were made in the applications for insurance.

■ Firstier argues that misrepresentations of the borrowers in the application materials submitted to IMI are not misrepresentations of Firstier. Section 3609, however, specifically encompasses misrepresentations made "by or in behalf of the insured...." The Affidavits of Purchaser and Vendor submitted to IMI, which contain the misrepresentations concerning purchase price and loan-to-value ratio, state that the certifications therein are for the purpose of inducing the mortgage insurer, if any, to insure the loan. These affidavits are signed by Firstier and by the borrowers. We therefore conclude that these misrepresentations were made "by or in behalf of" Firstier under § 3609.

■ In its principal brief, Firstier also argues that § 3609 does not apply to mortgage guaranty insurance. IMI notes in reply that if the statute is inapplicable, the common law rule, which treats every term in an insurance policy as a warranty, applies to bar recovery under the policies. Firstier does not repeat its argument in its reply brief. We think it clear that the section applies to mortgage guaranty insurance, and that the materials submitted to IMI, *see Firstier,* 708 F.Supp. at 1225–26, constituted "insurance applications" under the statute.

■ Firstier further urges that, regardless of the language of § 3609, the policies cannot be deemed void under Oklahoma law unless Firstier *knowingly* made misrepresentations. In support of its position, Firstier cites Oklahoma cases holding that a health insurance applicant's statements concerning his health are "subjective representations" not susceptible of present actual knowledge, and amount only to statements of opinion. Such statements are misrepresentations under § 3609 only if made in bad faith. *See, e.g., United Benefit Life Ins. Co. v. Knapp,* 175 Okl. 25, 51 P.2d 963 (Okl.1935).

We reject Firstier's invitation to analogize borrowers' representations in mortgage loan insurance applications to subjective representations in health insurance applications. Facts such as the purchase price of the mortgaged property and the down payment made thereon are capable of being ascertained with certainty. Thus, with respect to any such facts, the general rule applies that "the untruth of any material representation relied on by the insurance company in making the contract will avoid the contract, wholly irrespective of the intent, whether innocent or fraudulent, with which such misrepresentation was made." *Knapp,* 51 P.2d at 964. This rule has been consistently applied by other courts in cases involving mortgage guaranty insurance under statutes nearly identical to § 3609. *See, e.g., Twin City Bank v. Verex Assurance Inc.,* 733 F.Supp. 67, 70–71 (E.D.Ark.1990) (applying Arkansas law, court looked to statute governing life and disability policies); *Wisconsin Mortgage Assurance Corp. v. HMC Mortgage Corp.,* 712 F.Supp. 878, 882 (D.Utah 1989) (Utah law); *TCF Mortgage Corp. v. Verex Assurance, Inc.,* 709 F.Supp. 164, 166 (D.Minn. 1989) (Minnesota law); *United Guarantee Residential Ins. Corp. v. American Pioneer Sav. Bank,* 655 F.Supp. 165, 168 (S.D. Fla.1987) (Florida law).

Firstier argues that misrepresentation of the loan-to-value ratio was not material to the acceptance of the risk by IMI. We disagree. "LTV [loan-to-value] ratio is material because it measures risk, the touchstone of an insurance contract. As the LTV ratio increases, the risk of insuring the loan also increases even though the amount of the loan remains the same." *Verex Assurance, Inc. v. John Hanson Sav. & Loan,* 816 F.2d 1296, 1302 (9th Cir.1987). Furthermore, the record reveals no genuine dispute concerning IMI's reliance on the misrepresentations made to it.

■ Finally, Firstier challenges the district court's finding that there was no genuine dispute regarding the lack of any down payments made by the borrowers on the eight mortgaged properties. Firstier argues that it submitted evidence that down payments were made on three of the loans (it admitted below that no down payments were made on the other five). The buyers of these three properties, however, were specifically ordered by the district court to produce all documents evidencing any down payments or earnest money deposits made on the properties. No such documents were produced. Furthermore, cancelled checks drawn on the seller's account in the exact amount of the purported down payments were introduced into evidence. After reviewing the record, we agree that no fair-minded jury could find that any of the borrowers made down payments or otherwise had cash equity in the properties as represented to IMI. *See Firstier*, 708 F.Supp. at 1231.

Accordingly, we find that the court below properly granted summary judgment in favor of IMI on Firstier's claim of bad faith refusal to pay on the mortgage insurance policies at issue in this case.

### III

■ The district court granted attorney's fees to IMI as the prevailing party under Okla.Stat.Ann. tit. 36, § 3629. Firstier appeals this award on the ground that IMI failed to timely deny coverage as required by the statute. The district court found, however, that IMI denied coverage on the policies before Firstier's submission of proof of loss on any of the policies and that, thereafter, IMI continually rejected, in writing, Firstier's claims. *See* I R. tab 170. These findings are not clearly erroneous. Accordingly, the award of attorney's fees must be affirmed.

For the foregoing reasons, the judgments of the district court are AFFIRMED.