951 F.2d 1258
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 BANK OF OKLAHOMA, N.A., Plaintiff-Appellant,
v.
VEREX ASSURANCE, INC., Defendant-Appellee,
 Nos. 90-6253, 90-6254.
 United States Court of Appeals, Tenth Circuit.
 Dec. 27, 1991.
 
 1
 Before BALDOCK and McWILLIAMS, Circuit Judges, and DUMBAULD*, Senior District Judge.
 
 ORDER AND JUDGMENT
 
 2
 The issue presented in these appeals is whether the taxpayers of Oklahoma (through an agency established to encourage decent housing for low-income citizens) or the mortgage insurance company which guaranteed mortgage loans made to homeowners by lending institutions out of funds arising from the proceeds of bonds issued by the agency should bear the loss when the homeowners defaulted and the loans went sour. The District Courts decided in favor of the insurance company. In view of the applicable case law and the evidence in the record, we affirm.
 
 
 3
 Appellant, Bank of Oklahoma, N.A., is successor trustee of a bond issue by the Oklahoma Housing Finance Agency. Proceeds from the sale of the bonds are used by the Agency to fund loans made to home owners by various financial agencies (some now bankrupt or out of business). Before the Agency furnishes any funds to such financial agencies (hereinafter called "lenders"), the latter must put up mortgage insurance issued by appellee Verex, which has a monopoly on the mortgage insurance needed to float the housing loans. Two types of insurance are involved. A mortgage pool policy, where appellant is the insured, covers 100 percent of the loss on a particular mortgage after exhaustion of the individual primary insurance on the particular mortgage. The primary mortgage insurance usually covers 25% of the loss suffered upon default by a borrower. The primary insurance is issued pursuant to a "master policy" issued to a particular lender. The lender is the insured named in this policy. After issuance of the master policy, the lender submits to Verex with respect to each mortgage transaction with a homeowner certain standard documents, including the sales contract, a property appraisal, a credit report on the homeowner, a statement of the borrower's employment income, the price of the house, the amount of the down payment, and the like.
 
 
 4
 In deciding whether to issue a certificate of insurance for a particular mortgage under the master policy Verex relies on the documents submitted by the lender. In fact "Verex typically did not see any of the executed loan documents on the insured loan unless and until claim for loss was filed by the insured [lender under the master policy]." This practice of reliance on the lender's representations is called "review underwriting."[1] It is generally used in the mortgage insurance industry because it enables the insurer to act within 24 hours on an application submitted by a lender.[2]
 
 
 5
 Furthermore (and this is a very significant fact in the case at bar) the mortgage loan industry (unlike other branches of the insurance industry) also engages in a practice known as "post-claim" or "post-default underwriting."[3] Under this practice, after a mortgage is in default, and the insured claims payment pursuant to the policy, Verex makes an independent investigation into the merits of the mortgage loan transaction which it did not make when it insured the mortgage after mere "review underwriting." If it concludes that it would not have insured the mortgage if it had known the true facts, it then purports to rescind and retroactively cancel the insurance (returning the premium).
 
 
 6
 We think it is clear that in each of the transactions involved in the case at bar Verex would not have issued the policies if it had known the true facts violating its standard requirements (such as ratio of loan to appraised value, amount of down payment by borrower, and the like).
 
 
 7
 This refusal of Verex, after its "post-claim" recission, to honor its obligation (undertaken in reliance on the lender's representations under the "review underwriting" process) substantially defeats and frustrates the policy of the Oklahoma Housing Finance Agency of protecting the funds raised by its bond issue by requiring that mortgages funded from the proceeds of the bond issue must be insured (indeed insured by Verex, its exclusive chosen instrument for this purpose). The loss diminishes the value of the mortgage pool securing the bonds issued by the Oklahoma Housing Financial Agency.
 
 
 8
 Nevertheless Verex rightly invokes 36 Oklahoma Statutes § 3609, as in force in 1983 (when the policies involved in the instant appeals were issued), as defeating recovery in the case at bar.
 
 
 9
 The 1983 version of § 3609 provided three independent defenses for the insurer. The statute said:
 
 
 10
 "Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:
 
 1. Fraudulent; or
 
 11
 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
 
 
 12
 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."
 
 
 13
 Effective November 1, 1989, the old § 3609 (including the above-quoted language) was designated subsection A, and the following subsection B was added:
 
 
 14
 "Subsection A of this section shall not be applicable to mortgage guaranty insurance, as hereinafter defined. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under a policy of mortgage guaranty insurance unless material and fraudulent."
 
 
 15
 The effect of the 1989 amendment was to eliminate the third defense (i.e. that the company would not have issued the policy) and to require both fraud and materiality to permit rescission rather than treating each alone as a sufficient ground.
 
 
 16
 We need not consider whether Verex could establish "fraud and materiality" under the amended statute, as we hold that since the policies were issued in 1983 the pre-1989 law applies, and that its third defense suffices to support the decisions of the District Court in favor of Verex.
 
 
 17
 Likewise we need not consider whether under Oklahoma common law in 1983 "post-claim underwriting" was permitted or prohibited. That it was permitted by the specific terms of the 1983 statute suffices for the decision of this case. Similarily, we need not inquire whether the materials submitted by the lender for the insurance company's "review underwriting" were such as should have warned the insurer to investigate further. The third defense in the then applicable statutory provision was adequate ground upon which to rely.
 
 
 18
 Appellant argues that the public policy proclaimed by the 1989 law should be applied retroactively. But we are satisfied that the general rule against retroactivity of statutes is applicable here. Verex's obligations and rights must be measured by the law in force in 1983, when those obligations and rights were created.
 
 
 19
 Besides the general ethical distaste felt by courts for unfair retroactive application of new rules[4], appellant's argument on this point is squarely ruled by this Court's decision in Firstier Mortgage Co. v. Investors Mortgage Ins. Co., 930 F.2d 1508, 1510 n. 1 (10th Circ.1991), involving (as in the case at bar) mortgage loan policies under the identical provision of governing Oklahoma law, namely § 3609 as it stood in 1983.
 
 As there stated in Judge Logan's opinion:
 
 20
 Because there is no indication of a legislative intent to apply this amendment retroactively, it has no application to this case. See, e.g., Rea v. Witchita Mortgage Corp., 747 F.2d 567, 571 (10th Cir.1984) ("In Oklahoma, statutes are considered to have prospective operation only unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used."[5] ).
 
 
 21
 We are well aware of, and heartily agree with, the emphatic recognition by Justice Holmes that determination of policy is a prerogative of the legislative branch of government, and that legislative modifications of the common law should not be given a niggardly or hostile restrictive interpretation by the courts.[6]
 
 
 22
 As Holmes puts it,
 
 
 23
 Although courts sometimes have been slow to extend the effect of statutes modifying the common law beyond the direct operation of the words, it is obvious that a statute may indicate a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind.[7]
 
 And in a frequently cited case he wrote:
 
 24
 "Courts are apt to err by sticking too closely to the words of a law where those words import a policy that goes beyond them."[8]
 
 
 25
 A similar extensive utilization of statutes as a source of law, indeed "as a nursing mother of the law," is advocated by former dean James M. Landis, "Statutes and the Sources of Law," in Harvard Legal Essays 213, 214 (1934).
 
 
 26
 But these doctrines do not bear upon the problem of retroactive application. They simply permit generous scope to be given to statutory policies and standards when courts are dealing, in future cases after enactment of the statute, with related issues not specifically included in the legislative language. They afford no justification for applying the amended § 3609 to insurance policies issued before the new version became law.
 
 
 27
 Accordingly, the judgments of the District Court are
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Edward Dumbauld, United States Senior District Judge of the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 A California case written by Judge Tobriner and concurred in by Chief Judge Traynor, Barrera v. State Farm Mutual Automobile Insurance Co., 456 P.2d 674, 677, 682-85 (Calif.1969), emphatically rejects the practice of "post-claim underwriting" in the case of automobile liability insurance mandated by the State for the protection of innocent parties injured on the highways. Appellant urges that bondholders under the Oklahoma Housing Finance Agency are equally entitled to protection as innocent third-party victims of Verex's post-claim rescission practice
 
 
 [2]
 Brief of Appellee Verex, p. 7. See also Firstier Mortgage Co. v. Investors Mortgage Insurance Co., 708 F.Supp. 1224, 1228 (W.D.Okla.,1989)
 
 
 [3]
 See note 1, supra
 
 
 [4]
 It should be noted that the Supreme Court of the United States recognizes that although the intent of Congress must be given effect, nevertheless retroactive legislation "does have to meet a burden not faced by legislation that has only future effects." PBGC v. R.A. Gray & Co., 467 U.S. 717, 730-31 (1984)
 
 
 [5]
 Citations of Oklahoma cases omitted. See also Trinity Broadcasting Co. v. Leeco Oil Co., 692 P.2d 1364, 1366 (Okla.1985)
 
 
 [6]
 Thus in Johnson v. U.S., 163 Fed. 30, 32 (C.C.A.1, 1928), Holmes wrote:
 We recognize that courts have been disciplined to extend statutes modifying the common law beyond the direct operation of the words used, and that at times this disinclination has been carried very far. But it seems to us that there may be statutes that need a different treatment. A statute may indicate or require as its justification a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind. The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.
 
 
 [7]
 Gooch v. Oregon Short Line R.R., 258 U.S. 22, 24 (1922)
 
 
 [8]
 Olmsted v. U.S., 277 U.S. 439, 469, (1928). The case is most often cited for his declaration that "for my part I think it a less evil that some criminals should escape than that the Government should play an ignoble part." Ibid., at 470