2000 OK 94

**Dustin HARKRIDER, Plaintiff–Garnishor–Appellee,**

v.

**Raymond POSEY, Defendant,**

v.

**Oklahoma Property and Casualty Insurance Company, Defendant–Garnishee–Appellant.**

No. 92,911.

Supreme Court of Oklahoma.

Dec. 5, 2000.

Rehearing Denied May 29, 2001.

Jon Ed Brown, LeForce & McCombs, P.C., Idabel, OK, for Appellee.

Micky Walsh and Tom M. Moore, Oklahoma City, OK, for Appellant.

Rex K. Travis, Oklahoma City, Oklahoma, for amicus curiae, Oklahoma Trial Lawyers Association.

OPALA, J.

¶1 The dispositive issue on certiorari is whether the trial court's summary judgment for plaintiff-garnishor is correct. We answer in the affirmative.

# I

## ANATOMY OF LITIGATION

¶2 On the night of 28 June 1996 Dustin Harkrider ("Harkrider") was crossing an intersection in his automobile when it was struck by a 1979 Ford pickup driven by Raymond Edward Posey ("Posey"). The pickup belonged to Robin Denise Pond ("Pond"), with whom Posey was then living. Pond had given Posey (implied) permission to drive her truck. Harkrider suffered bodily injuries and property damage in the collision.

¶3 Approximately one year earlier, Pond had purchased from Oklahoma Property and Casualty Insurance Company ("Oklahoma Property") a liability insurance policy covering the pickup with the minimum amount of liability insurance required under Oklahoma's Compulsory Insurance Law.[1] In her insurance application, Pond had represented that there were no other persons fourteen years of age or older residing in her household. *This answer was untrue inasmuch as Posey was then living with her.* At no time relevant to this case did Posey have a valid driver's license.

¶4 Shortly after the accident, Oklahoma Property notified Pond it was denying coverage for the collision because she had failed to disclose (in her insurance application) that Posey was living with her. Had it known of an unlicenced driver's presence in her

---

1. The Compulsory Insurance Law requires liability insurance in connection with the operation of a motor vehicle in Oklahoma. *See,* 47 O.S.1991 *and Supp* 1995 §§ 7–600 et seq.

household, Oklahoma Property stated, it would have issued a named-driver exclusion for Posey. After reminding Pond of a provision in the insurance application that any misrepresentation would render the policy void, Oklahoma Property informed her that it was canceling the policy and refunding her remaining premium. Shortly thereafter, Oklahoma Property sent Harkrider a claim denial letter as well.

¶ 5 Harkrider then brought an action against Posey for bodily injuries and property damage. Also named as a defendant was Oklahoma Property, from whom Harkrider sought damages for bad faith and fraud in connection with the insurer's conduct in adjusting the claim. The parties agreed on a judgment against Posey for $31,000 to be satisfied out of any applicable proceeds of Pond's liability policy with Oklahoma Property.[2]

¶ 6 Harkrider, as Posey's judgment creditor, then brought a garnishment proceeding against Oklahoma Property. The insurer denied coverage. Harkrider moved for summary judgment, arguing *that an insurer may not avoid liability to an innocent third party under a policy of compulsory automobile liability insurance based upon a misrepresentation by the insured in his (or her) insurance application.* To permit the insurer such a defense, Harkrider contended, would violate the public policy underlying compulsory automobile liability insurance. Oklahoma Property countered that *its right* to retrospectively avoid coverage under the policy due to a misrepresentation by the insured in the application process *is con-*

*ferred by the provisions of 36 O.S.1991 § 3609.*[3] That section contains no publicpolicy exception for mandatory automobile liability coverage. The trial court agreed with Harkrider and gave summary judgment to him. Oklahoma Property appealed.

¶ 7 The Court of Civil Appeals reversed based upon this court's holding in *Pierce v. Oklahoma Property and Casualty Insurance Company,*[4] that a named-driver exclusion is compatible with compulsory automobile liability insurance and that an insurer hence cannot be held liable (to an innocent third-party claimant) for damages caused by one named in an insurance contract as an excluded driver.[5] Deeming itself bound by *Pierce,* the Court of Civil Appeals held in the instant case that the provisions of 36 O.S. 1991 § 3609 may be interposed by an insurer to avoid liability under a compulsory liability insurance policy *to the extent that the insured's misrepresentation in the insurance application prevents the insurer from exercising its right to issue a named-driver exclusion.*[6] Having granted Harkrider's certiorari petition, we now reject the Court of Civil Appeals' extension of *Pierce* beyond the narrow context of a permissible contractual exclusion and *affirm* the trial court's summary disposition of this cause.[7]

## II

## STANDARD OF REVIEW

¶ 8 Summary process is a procedural pretrial device for the prompt and efficient disposition of an action *sans* forensic combat where there is no dispute as to the material

---

2. Pursuant to the agreed judgment, Harkrider also dismissed with prejudice his claims against Oklahoma Property for bad faith and fraud.

3. For the terms of the statute, *see infra,* note 11.

4. 1995 OK 78, 901 P.2d 819.

5. *Id.* ¶ 15, at 823.

6. *Harkrider v. Oklahoma Property and Casualty Ins. Co.,* Opinion of the Court of Civil Appeals, Div. III, Released for Publication by Order of the Court of Civil Appeals, 3 December, 1999 ("We here hold that as the alleged misrepresentation concerns only the issue of an otherwise proper, named driver exclusion from coverage, the public policy underlying compulsory, statutorily

mandated minimum liability insurance required by 47 O.S. § 7–601 is not violated.").

7. In conjunction with his response to Oklahoma Property's petition-in-error, Harkrider moved to dismiss the appeal, arguing that Oklahoma Property had failed to preserve the issue of the availability of the § 3609 misrepresentation defense by not raising it in its motion to reconsider/new trial. This court deferred consideration of the dismissal motion until the decision on the merits. In its opinion, COCA first denied Harkrider's motion to dismiss and then reversed the judgment in his favor. Harkrider did not re-press the dismissal motion on certiorari. It is therefore deemed abandoned. *Hough v. Leonard,* 1993 OK 112, ¶ 15, 867 P.2d 438, 445; *Barnett v. Barnett,* 1996 OK 60, ¶ 13, 917 P.2d 473, 477.

facts or as to the inferences to be drawn from undisputed facts, and the law favors the movant's claim or liability-defeating defense.[8] It is not the purpose of summary process to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain.[9] The material facts in the cause here under review are not in dispute, and *the sole issue is whether the trial court correctly applied the law when it ruled that Oklahoma Property could not interpose misrepresentation as a defense in Harkrider's garnishment proceeding.* Summary relief issues stand before us for de novo review, in which this court's scrutiny is exercised independently and without deference to the trial court's resolution of the law.[10]

### III

### THE MISREPRESENTATION MADE BY POND IN HER INSURANCE APPLICATION DOES NOT RENDER THE POLICY IN QUESTION VOID, BUT MERELY VOIDABLE

¶ 9 Oklahoma Property argues that the provisions of 36 O.S.1991 § 3609[11] pro-

vide it with a statutory defense to Harkrider's garnishment claim based upon Pond's failure to reveal in her insurance application that Posey, an additional and unlicenced driver, was residing in her household. Upon learning of Pond's misrepresentation, Oklahoma Property moved affirmatively to rescind her policy, treating it as void *ab initio* by refusing to provide coverage for an accident which occurred before rescission was attempted. While we accept Oklahoma Property's contention that § 3609 is applicable to the insurance contract before us,[12] we cannot accede to Oklahoma Property's argument that the misrepresentation made in this case by Pond renders the policy *ipso jure*[13] void *ab initio.* Rather, a policy issued in reliance on a misrepresentation of the kind here under review is merely *voidable.*

¶ 10 We note at the outset that § 3609 *does not use either term,* void or voidable. Rather § 3609 provides that a misrepresentation in an application for an insurance policy "does not prevent recovery under the policy unless" the misrepresentation is either fraudulent, material to the risk

---

8. *Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455–56.

9. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 7, 952 P.2d 492, 497; *Gray v. Holman,* 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

10. *Mahan v. NTC of America,* 1992 OK 8, ¶ 2, 832 P.2d 805, 808 (Opala, C.J., concurring) ("The de novo standard of review is utterly non-deferential because it ascribes absolutely no weight to a lower tribunal's findings."). An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable by a de novo standard. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, 935 P.2d 319, 321; *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary independent and non-deferential authority to re-examine a trial court's legal rulings."); *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

11. The terms of 36 O.S.1991 § 3609 provide in pertinent part:
    "A. All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured,

shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:
    1. Fraudulent; or
    2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
    3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise. . . ."

12. By its terms § 3609 applies to all types of insurance contracts other than those expressly excepted. The latter are set forth in 36 O.S.1991 § 3601 and in paragraph B of § 3609. They are: reinsurance, certain policies not issued for delivery in Oklahoma nor delivered in Oklahoma, ocean marine and foreign trade insurance, title insurance, and mortgage guaranty insurance.

13. The Latin phrase *"ipso jure"* means "[b]y the law itself; by the mere operation of law." BLACK'S LAW DICTIONARY 834 (7th ed.1999).

to be insured, or causes the insurer to issue the policy or include terms in the policy when the insurer would not have done so had the true facts been known. *Nothing in the statutory text suggests that in enacting § 3609 the legislature intended to abrogate the common-law distinction between void and voidable contracts.*[14] The common law supplements our statutes.[15] *It remains in full force unless it is clearly and expressly modified or abrogated by our constitution or by statute.*[16] This court has never before been called upon to consider in the context of § 3609 the distinction between void and voidable contracts. The word *void* has occa-

sionally been used by this court in our § 3609 jurisprudence, but it is clear from the context that we were not in those decisions using the term as a word of art to distinguish it from voidable.[17] Nothing in the statutory text of § 3609 nor in our extant jurisprudence prevents us from interpreting § 3609 in conformity with the general common law of contracts which recognizes the distinction between contracts that are void and those that are merely voidable.

¶ 11 At common law a contract procured through misrepresentation can be either void or voidable, *depending on the nature of the misrepresentation.*[18] Where a

**14.** Although the term void is often used interchangeably and imprecisely to mean voidable, the two terms have quite different meanings. *See, e.g., Kincaid v. Black Angus Motel, Inc.,* 1999 OK 54, ¶ 10, 983 P.2d 1016, 1019; *Great American Reserve Ins. Co. v. Strain,* 1962 OK 241, ¶ 5, 377 P.2d 583, 587. Inattention to this distinction is not without precedent or consequence even at the highest judicial level. In 1929, the United States Supreme Court held in *Minneapolis, St. P. & S.S.M. Ry. Co. v. Rock,* 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766 (1929) that where an employee procured his employment through a fraud which was "abhorrent to public policy," his contract of employment was void, not voidable, and the employee would be barred from recovering benefits under the Federal Employers' Liability Act. *Id.* at 415, 49 S.Ct. at 365. This pronouncement was followed three years later by the Court's pronouncement in *Minneapolis, St. P. & S.S. M. Ry. Co. v. Borum,* 286 U.S. 447, 52 S.Ct. 612, 76 L.Ed. 1218 (1932), in which the Court held that the fraudulent procurement of employment did not prevent an employee from recovering benefits under the Federal Employers' Liability Act, distinguishing *Rock* on its facts. *Id.* at 451, 52 S.Ct. at 613. Lower courts struggled for years thereafter with the question of which frauds were within the *Rock* doctrine and which ones came within the rule in *Borum.* In 1961, the Court in *Still v. Norfolk & Western Ry. Co.,* 368 U.S. 35, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961), expressly limited *Rock* to its precise facts, holding that "... the status of employees who become such through other kinds of fraud [i.e. frauds other than that practiced by the employee in *Rock* ], although possibly subject to termination through rescission of contract of employment, must be recognized for purposes of suits under the Act." *Id.* at 45, 82 S.Ct. at 154. *Still* hence restored the distinction between void and voidable contracts in litigation under the Federal Employers' Liability Act where fraud in the procurement of employment is an issue.

**15.** *Silver v. Slusher,* 1988 OK 53, ¶ 10, 770 P.2d 878, 884. *See* the provisions of 12 O.S.1991 § 2,

which state in pertinent part: "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; ..."

**16.** *Silver v. Slusher,* 1988 OK 53, ¶ 10, 770 P.2d 878, 884; 12 O.S.1991 § 2; *State Mut. Life Assur. Co. v. Hampton,* 1985 OK 19, ¶ 3, 696 P.2d 1027, 1036 (Opala, J., concurring); *Greenberg v. Wolfberg,* 1994 OK 147, ¶ 11, 890 P.2d 895, 900 ("The common law's legislative abrogation may not be effected by mere implication; [footnote omitted] it must be clearly and plainly expressed. [footnote omitted].").

**17.** *See, e.g., Massachusetts Mut. Life Ins. Co. v. Allen,* 1965 OK 203, ¶ 26, 416 P.2d 935, 941. *See also, Coppin v. Shelter Mut. Ins. Co.,* 1987 OK CIV APP 58, ¶ 5, 742 P.2d 594, 595; *Firstier Mort. Co. v. Investors Mortg. Ins. Co.,* 930 F.2d 1508 (10th Cir.1991).

**18.** This distinction is embodied in §§ 163 and 164 of the RESTATEMENT (SECOND) OF CONTRACTS. The terms of § 163 of the RESTATEMENT (SECOND) OF CONTRACTS are:

"When a Misrepresentation Prevents Formation of a Contract
If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent."
The terms of § 164 of the RESTATEMENT (SECOND) OF CONTRACTS are:
"When a Misrepresentation Makes a Contract Voidable
(1) If a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.

contract is entered into on the basis of a misrepresentation which deceives one of the parties as to the true nature of the proposed agreement, the purported contract is rendered *void*.[19] Known as fraud *in esse contractus*, fraud in the execution, or fraud *in factum*, a misrepresentation of this sort results in a contract which is a nullity.[20] No legal rights are created and either (or any) party may ignore the purported contract at his pleasure, to the extent it remains executory.[21] On the other hand, where a contract is entered into on the basis of a misrepresentation which goes to the contract's *inducement*, as a notion distinct from its nature, the tainted agreement is rendered merely *voidable*.[22] Fraud in the inducement is defined as a

> "misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understand-

ing of the risks, duties or obligations she has undertaken."[23]

A contract voidable for fraud in the inducement creates a valid contractual relationship, which subsists in contemplation of law until the parties are relieved of their obligation by a decree of rescission.[24]

■ ¶ 12 Applying this distinction to the facts of this case, we hold that the misrepresentation made by Pond in her insurance application falls within the category of fraud in the inducement. There is no allegation or proof that Oklahoma Property was deceived as to the true nature of the insurance contract so as to render the contract void. Rather, Pond misled Oklahoma Property as to the risk it was insuring and the obligations and duties it was undertaking. Accordingly, the fraud operated to render the policy merely *voidable*. We next address the impact of this distinction on the outcome of Harkrider's claim.

---

> (2) If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction."

**19.** *H.J. Jeffries Truck Line v. Grisham*, 1964 OK 242, ¶ 20, 397 P.2d 637, 643. A "void contract" is one in which the parties have purported to enter into a contractual relationship, but in fact have created no legal relation *inter se* at all. *See also, Minneapolis, St. P. & S.S.M. Ry. Co. v. Rock*, *supra*, note 14.

**20.** *Fraud in esse contractus* has been described as a misrepresentation which "is regarded as going to the very character of the proposed contract itself" and "the other party neither knows nor has reason to know of the character of the proposed agreement, ..." E. Allan Farnsworth, CONTRACTS, § 4.10, at 446 (2nd ed.1998). It induces in the wronged party a belief that what is being done is something other than what it really is. 12 S. Williston, A treatise on the law of contracts, § 1488, at 332 (3d ed.1970). A classic example of fraud *in esse contractus* is that of a celebrity who, while signing autographs, unknowingly signs a promissory note slipped in among the papers. *See, e.g., George v. Tate*, 102 U.S. 564, 570, 26 L.Ed. 232 (1880) (surreptitious substitution of one paper for another).

**21.** *Griffin v. Smith*, 101 F.2d 348, 349 (7th Cir. 1939).

**22.** *Shaffer v. Jeffery*, 1996 OK 47, n. 14, 915 P.2d 910, 917, n. 14 ("We recognize that a claim of fraud in the inducement amounts to a claim that the contract is voidable rather than void."); *State Ins. Fund v. Brooks*, 1988 OK 50, ¶ 5, 755 P.2d 653, 656; *Terrill v. Laney*, 1948 OK 109, ¶ 7, 193 P.2d 296, 300 ("... the effect of fraud in the inducement is to render a contract voidable and not void.").

**23.** BLACK'S LAW DICTIONARY 661 (6th ed.1990).

**24.** *State Insurance Fund v. Brooks*, 1988 OK 50, ¶ 5, 755 P.2d 653, 656; *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, ¶ 10, 983 P.2d 1016, 1019; *Great American Reserve Ins. Co. v. Strain*, 1962 OK 241, ¶ 5, 377 P.2d 583, 587. The duties of a party who seeks to rescind a contract are set forth in 15 O.S.1991 § 235, which provides:

> "Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:
> 1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,
> 2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

## IV

### PUBLIC POLICY PREVENTS THE APPLICATION OF § 3609 TO DEFEAT THE CLAIM OF AN INNOCENT THIRD–PARTY ACCIDENT VICTIM UNDER A VOIDABLE COMPULSORY AUTOMOBILE LIABILITY INSURANCE POLICY

¶ 13 The distinction between a void contract and one that is merely voidable is important where, as in the case here under review, *the rights of an innocent third party are at stake.* An innocent third party can acquire no rights in a contract which is void, whereas the interests of an innocent third party are often protected where a contract is voidable.[25] *The question here is whether the right of an innocent third party to recover under a voidable policy of compulsory automobile liability insurance should receive such protection.* For the reasons to be stated, *we conclude that they should* and hence hold that a misrepresentation which would relieve an insurer of liability to its insured or to the insured's designated beneficiary had it been made in an application for insurance not mandated by law[26] does not relieve the insurer of liability to an innocent third party whose protection is mandated by Oklahoma's compulsory insurance law.

¶ 14 The regulation of motor vehicles on the public highways is a legitimate exercise of the police powers of the state, pursuant to which the state may make all reasonable laws, rules, and regulations for the safety and protection of the public.[27] The state has exercised this power by enacting the Oklahoma Financial Responsibility Act ("Act").[28] Article VI of the Act, entitled Compulsory Liability Insurance,[29] requires owners of nonexempt motor vehicles to keep in force liability insurance or other authorized security in an amount not less than that required by 47 O.S.1991 § 7–204[30] as a precondition to the registration of a vehicle.[31] Tangible proof that the requisite insurance

25. For example, in the law of negotiable instruments, a party tricked into signing a promissory note by fraud *in esse contractus*—having been told that what he was signing was merely a receipt, for instance—may assert fraud as a defense even against a holder in due course. In contrast, a party induced to sign a promissory note by a misrepresentation which does not affect the maker's knowledge of the nature of the document may not raise the misrepresentation as a defense against a holder in due course. Another common application of this distinction is seen in the law governing the sale of goods. An innocent third party who purchases goods in good faith takes title free of a defense by the original seller that the original buyer obtained the goods by fraud which only goes to the inducement. MURRAY ON CONTRACTS, § 95(C) (3rd ed.1990), at 475–476. The distinction between real and personal defenses in the law of negotiable instruments, comparable to the distinction in general contract law between fraud in *esse contractus* and fraud in the inducement, is codified in Oklahoma in the provisions of 12A O.S.1991 § 3–305.

26. *See, e.g., Whitlatch v. John Hancock Mutual Life Ins. Co.,* 1968 OK 6, 441 P.2d 956 (life insurance); *Claborn v. Washington Nat'l Ins. Co.,* 1996 OK 8, 910 P.2d 1046 (health insurance).

27. *Cf. Commercial Standard Ins. Co. v. Bacon,* 154 F.2d 360, 362 (10th Cir.1946) (recognizing the regulation of the operation of motor carriers on the public highways as a legitimate exercise of the police powers of the state).

28. The Financial Responsibility Act is codified as Chapter 7 of Title 47. It begins at 47 O.S.1991 § 7–101. For subsequent amendments, *see* 47 O.S. Supp.1995 § 7–101 et seq.

29. The Compulsory Liability Insurance Law is codified as Article VI of Chapter 7 of Title 47. It begins at 47 O.S.1991 § 7–600. For subsequent amendments, *see* 47 O.S. Supp.1995 § 7–600 et seq.

30. The provisions of 47 O.S.1991 § 7–204 are incorporated into Article VI, the Compulsory Liability Insurance Law, by § 7–600. The former specifies a policy limit of not less than $10,000 to cover bodily injury to or death of one person in any one accident and not less than $20,000 to cover bodily injury to or death of two or more persons in any one accident. It also requires coverage of injury to or destruction of the property of others in the minimum amount of $10,000 in any one accident.

31. The terms of 47 O.S. Supp.1995 § 7–601 (C)(1) provide in pertinent part:

"On and after September 1, 1993, unless otherwise provided by law, no motor vehicle shall be operated in this state unless there is in effect with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle...."

or other authorized security is in force must be provided to the registering agency.[32] Additionally, owners must at all times carry in their vehicles security verification forms confirming the existence of liability coverage or other security, must produce the form for inspection by any law enforcement officer or representative of the Department of Public Safety, and must show the form in the event of an accident to any affected person.[33]

■■■ ¶ 15 The principal purpose of the Act is to protect the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons.[34] *This clearly articulated public policy of our compulsory liability insurance law plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Act.*[35] As a result, the appellate courts of this state have declared void as contrary to statutorily articulated policy certain exclusionary provisions in automobile liability insurance contracts which were considered too broad and sweeping in nature.[36]

¶ 16 One exclusionary provision which this court has sanctioned is the named-driver exclusion, in which an insurer refuses to assume the risk associated with the driving of a specified individual. In *Pierce v. Oklahoma Property and Casualty Insurance Company*,[37] we held that a named-driver exclusion is consistent with the compulsory insurance law and is hence valid.[38] It is upon *Pierce* that the Court of Civil Appeals relied. COCA reasoned from *Pierce's* approval of the named-driver exclusion that an insurer retains the right to disaffirm and rescind a contract of compulsory automobile liability insurance to the extent that an insured's misrepresentation prevents the insurer from obtaining the permissible exclusionary provision.

¶ 17 *The intermediate court accorded our holding in Pierce too sweeping an effect.* There we relied on the express language of 47 O.S. 1991 § 7–600(1)(c) and 7–601(B) to conclude that the legislature "chose to allow the contracting parties to exclude specifically named individuals." [39] Our holding in *Pierce* was hence based on the fact that the Act *expressly authorizes contractual exclusions* of the kind presented in that case. *It does not follow from the fact that an insurer may obtain a named-driver exclusion that the insurer, having failed to do so, can avoid liability to an innocent third party injured by a non-excluded driver.*

■■■ ¶ 18 Under Oklahoma's mandatory automobile liability insurance scheme, liability insurance is not issued simply to protect the assets of the insured in the event liability for an accident is incurred, but also, if not primarily, to protect members of the public

**32.** The terms of 47 O.S.1991 § 7–602 (B)(2) provide:

"Every person registering a motor vehicle in this state ... shall certify the existence of security with respect to such vehicle by surrendering to a motor license agent or other registering agency a current owner's security verification form or an equivalent form issued by the Department. A motor license agent or other registering agency shall require the surrender of such form prior to processing an application for registration or renewal."

This section, amended in a manner of no relevance to the cause under review, is now codified at 47 O.S. Supp.1999 § 7–602 (A)(2). *See*, Laws 1999, c. 232, § 4, eff. July 1, 1999.

**33.** The terms of 47 O.S. Supp.1995 § 7–601 (C)(1) provide in pertinent part:

"... Proof of such security shall be carried in the vehicle at all times and shall be produced for inspection upon request by any law enforcement officer or representative of the Department and, in case of collision, such proof shall be shown upon request of any person affected by the collision."

**34.** *Thomas v. Nat'l Auto. and Cas. Ins. Co.,* 1994 OK 52, ¶ 10, 875 P.2d 424, 427.

**35.** *Id.*

**36.** *Nation v. State Farm Ins. Co.,* 1994 OK 54, ¶ 8, 880 P.2d 877, 878 (the household exclusion as applied to the insured's minor child); *Young v. Mid–Continent Casualty Co.,* 1987 OK 88, ¶ 16, 743 P.2d 1084, 1088(exclusion based on age); *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 1987 OK 121, ¶ 5, 747 P.2d 947, 953 (geographical restriction); *Hibdon v. Casualty Corp. of America, Inc.,* 1972 OK CIV APP 3, ¶ 14, 504 P.2d 878, 882 (exclusion of passenger).

**37.** 1995 OK 78, 901 P.2d 819.

**38.** *Id.* ¶ 15, at 823.

**39.** *Id.*

from the potentially disastrous financial consequences of using the roadways in our automobile-dependent society. To effectuate this policy, the legislature has required the purchase and maintenance of insurance as a precondition for vehicle registration and has prohibited the operation of uninsured vehicles on Oklahoma's roads. The enactment of mandatory liability insurance has, in effect, transformed what was a private insurance arrangement into a quasi-public obligation.[40] To permit post-loss rescission of a voidable policy of liability insurance would render a registered vehicle uninsured for a period of time in the past with no opportunity for the vehicle's owner or operator to remedy the absence of insurance. The innocent victim's statutory protection would be thwarted. It is inconceivable that the legislative policy expressed in our mandatory insurance regime might be so easily defeated.

¶ 19 While we do not wish to be understood as condoning the concealment of information, we do not believe that the insurer is without resources to investigate the information tendered by an insured. Indeed, even without specific information, an insurer is not without means to confine its risk to unobjectionable drivers by the inclusion in its policy of appropriate restrictive provisions.[41] The insurer must remain ever mindful that because a statute-mandated policy bears some characteristics of a public-law obligation, the full range of traditional freedom-of-contract principles is not the promisor's due.[42] In contrast to a purely private insurance arrangement where the burden is on the insured to provide accurate answers in the application,[43] in the case of law-mandated coverage procured by the insured for the benefit of the public, *the risk of a false answer must be borne by the insurer where an innocent third party's interests have intervened due to an accident.* We hence hold that *public policy prohibits an insurer from avoiding liability to an innocent third party under a voidable policy of compulsory automobile liability insurance because of a misrepresentation by the insured in the insurance application.*[44]

¶ 20 Oklahoma Property urges that acceptance of Harkrider's argument that the public policy underlying the compulsory insurance law overrides § 3609 amounts to a repeal of the latter by implication. Oklahoma Property contends that this is unnecessary because the two are not irreconcilably in conflict and both can be given effect without either violating the purpose of the other. We agree and submit that we have done precisely that, albeit with a different result than that proposed by Oklahoma Property. Our pronouncement recognizes that § 3609 and the compulsory insurance law can be construed harmoniously, giving due effect to each, by interpreting § 3609 within the context of generally applicable principles of contract law relating to void

---

40. *See, Sentry Indemnity Co. v. Sharif*, 248 Ga. 395, 282 S.E.2d 907 (1981).

41. *Cf., Pierce v. Oklahoma Property and Cas. Co.*, 1995 OK 78, 901 P.2d 819. *Accord, Garza v. Glen Falls Ins. Co.*, 105 N.M. 220, 731 P.2d 363 (1986).

42. "Public policy extends to freedom of contract insofar as private dealing is restricted by law for the good of the community." *Mercury Investment Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 10, n. 14, 706 P.2d 523, 530, n. 14. Cf. *Rowland v. City of Tulsa*, 1999 OK 75, ¶ 10, n. 23, 988 P.2d 1282, 1287, n. 23 (Opala, J. dissenting); *PFL Life Ins. Co. v. Franklin*, 1998 OK 32, ¶ 17, n. 21, 958 P.2d 156, 164, n. 21.

43. *See, Vaughn v. American National Ins. Co.*, 1975 OK 169, 543 P.2d 1404 (life insurance); *Whitlatch v. John Hancock Mutual Life Ins. Co.*, 1968 OK 6, 441 P.2d 956 (life insurance); *Firsti-* er *Mortg. Co. v. Investors Mortg. Ins. Co.*, 708 F.Supp. 1224 (W.D.Okla.1989), aff'd, 930 F.2d 1508 (10th Cir. 1991) (mortgage guaranty insurance); *BancOklahoma Mortg. Corp. v. Hysell*, 1996 OK CIV APP 83, 925 P.2d 563 (credit life insurance); *Hobbs v. Prudential Property and Casualty Co.*, 1993 OK CIV APP 76, 853 P.2d 252 (homeowner's insurance); and *Claborn v. Washington Nat'l Ins. Co.*, 1996 OK 8, 910 P.2d 1046 (health insurance).

44. Today's decision is circumscribed by the fact that the liability limits of the policy here under review *do not exceed the minimum amount mandated by Oklahoma's compulsory insurance law.* This pronouncement does not hence opine upon an insurer's liability for policy limits that stand in excess of the statutory minimum. Nothing in this opinion's text may be construed as discordant with our pronouncement in *May v. National Union Fire Ins. Co.*, 1996 OK 52, 918 P.2d 43, 48–49.

and voidable contracts. The application of those principles requires an analysis of the rights of an innocent third party accident victim in a voidable insurance contract. That those rights are deemed worthy of protection based upon the public policy of the compulsory insurance law is consistent with § 3609, properly understood. Our conclusion does not amount to an implied repeal of that section nor otherwise treat that enactment as ineffectual.

¶ 21 Nor does our pronouncement give precedence to the public policy that underlies compulsory automobile insurance at the expense of the public policy behind § 3609. Oklahoma Property suggests that the public policy underlying § 3609 is to prevent an insured who has misrepresented a fact in his/her insurance application from benefiting from the misrepresentation. This court has never enunciated any notion of public policy in regard to § 3609. Assuming arguendo that Oklahoma Property has correctly stated that policy, we submit that today's pronouncement does not violate it. Compulsory liability insurance is mandated for the benefit of the public, not for the benefit of the insured driver.[45] Here, it is a member of the public—Harkrider—who will benefit from this court's enforcement of Pond's insurance contract, *not the insured herself,* the untruthful driver-Pond. In fact, Pond is not even the judgment debtor in this case. Posey is the judgment debtor, and his personal assets were eliminated under the agreed judgment as a source of payment of the judgment. Hence, Pond stands to gain nothing if Harkrider's claim is enforced against Oklahoma Property.

¶ 22 Today's pronouncement is consistent with the approach taken by many other state courts, which have held their various statutory provisions relating to compulsory automobile liability insurance prevent post-loss rescission to defeat the insurer's liability to an innocent third party.[46] Although the ratio-

---

45. *Thomas v. Nat'l. Auto. and Cas. Ins. Co.,* 1994 OK 52, ¶ 10, 875 P.2d 424, 427.

46. *Teeter v. Allstate Ins. Co.,* 9 A.D.2d 176, 192 N.Y.S.2d 610 (1959), aff'd. 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961) ("It is impossible to reconcile the existence of a right to rescind *ab initio* with the general scheme of the compulsory insurance law. The purpose of the statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage.... But it would be obviously impossible for an insured to comply with his statutory obligation if a common-law right to rescind *ab initio* were allowed to exist alongside the statutory provision for termination by notice. If a rescission were allowed to be effective retroactively as of the date of the issuance of the policy, it would be impossible for the insured to do what the statute requires him to do, i.e., either procure new insurance or surrender his number plates, prior to the date upon which the termination of the coverage became effective."); *Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674, 687 (1969); *Rauch v. American Family Ins. Co.,* 115 Wis.2d 257, 340 N.W.2d 478, 482 (1983); *Canavan v. Hanover Ins. Co.,* 356 Mass. 88, 248 N.E.2d 271 (1969); *Richard v. Fliflet,* 370 N.W.2d 528 (N.D. 1985); *American Mut. Ins. Co. v. Commercial U. Ins. Co.,* 116 N.H. 210, 357 A.2d 873 (1976), *overruled on other grounds by Vigneault v. Travelers Ins. Co.,* 118 N.H. 75, 382 A.2d 910 (1978) (relying upon statute which provides that the liability of an insurer under a motor vehicle liability policy becomes absolute whenever loss or damage occurs); *Midland Risk Mgmt. v. Watford,* 179 Ariz. 168, 876 P.2d 1203 (App.1994) (same); *Odum v. Nationwide Mut. Ins. Co.,* 101 N.C.App. 627, 401 S.E.2d 87 (1991) (same); *Farmers Ins. Exch. v. Anderson,* 206 Mich.App. 214, 520 N.W.2d 686 (1994) (same); *Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 641 A.2d 195 (1994) ("For this court to construe ... [Maryland's statutory provisions on compulsory liability insurance] as allowing rescission *ab initio,* under the circumstances of this case, would ... defeat the legislative policy underlying the statutory provisions...."); *Continental Western Ins. Co. v. Clay,* 248 Kan. 889, 811 P.2d 1202 (1991); *Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33, 268 S.E.2d 623 (1980); *National Ins. Ass'n v. Peach,* 926 S.W.2d 859 (Ky.App.1996) (insurer's right to rescind a policy with regard to claims of persons not involved in making the misrepresentation abrogated in light of "the remedial nature and purpose of ... Kentucky's mandatory insurance scheme...."); *Erie Ins. Exch. v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996) ("Automobile insurance is not issued solely for the benefit of the individual purchaser. Motorists carry insurance not only for their own protection, but also, for the benefit of third parties who may suffer through the negligence of the insured motorist. This concept of providing for the foreseeable consequences of driving in today's society is certainly one of the most important policy considerations prompting the remedial legislation in this area.... Although on the surface it appears harsh to force the insurance company to abide by a contract procured by fraud, it would be beyond harsh to preclude the third party appellees, who

nale varies from state to state, it is generally agreed that rescission of a non-void contract is inconsistent with the public policy that underlies compulsory automobile liability insurance.[47]

## V

## THE NISI PRIUS COUNSEL FEE AND COSTS AWARD IS AFFIRMED

¶ 23 Oklahoma Property also sought appellate review of the trial court's order which granted Harkrider an attorney's fee and costs under the provisions of 12 O.S.1991 § 1190 (B)(1). That statute authorizes the

taxation of costs, including a reasonable attorney's fee, in favor of the prevailing party in a garnishment proceeding where the judgment creditor recovers more than the garnishee admits in its answer.[48] Although the issue was properly preserved and raised on appeal, COCA failed to dispose of it. While neither party addressed the counsel-fee and taxation of costs issue on certiorari, we do so under the authority of *Hough v. Leonard.*[49]

¶ 24 In accordance with the court's rules that bar briefs in appeals under the accelerated-process rubric, the insurer did—and could do—no more than raise the costs-and-fee issue in its petition in error.[50] We construe Oklahoma Property's quest for reversal

---

are innocent of trickery, and injured through no fault of their own, from receiving protection under the policy. Weighing all the factors, we are compelled to conclude that it is clearly the intent of the remedial legislation known as Act 78 to preclude recission of an insurance policy, as to third parties, beyond the 60 day grace period within the Act itself."); *Munroe v. Great American Ins. Co.*, 234 Conn. 182, 661 A.2d 581 (1995) ("We conclude that the compulsory automobile insurance statutes, read as a whole, abrogate the right of an insurer to rescind automobile insurance *ab initio* so as to deny recovery to an innocent third party victim."); *Ferguson v. Employers Mut. Cas. Co.*, 254 S.C. 235, 174 S.E.2d 768 (1970) (applying North Carolina's Assigned Risk Plan; *Fisher v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 224 N.J.Super. 552, 540 A.2d 1344 (1988). *Accord*, C.C. Marvel, Annotation, "*Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility or assigned risk automobile insurance*", 83 A.L.R.2d 1104 (1962) (citing cases).

**47.** *See, Barrera v. State Farm Mut. Auto. Ins. Co., supra* note 46 at 687 ("... [T]he automobile liability insurer incurs a direct duty to those members of the public, situated as the plaintiff, who stand to benefit from the validity of a contract of insurance which protects them against the risk of their own injury or death. Public policy requires the recognition of this duty; without its imposition a basic purpose of the Financial Responsibility Law would be significantly thwarted and persons such as the plaintiff would remain without an effective remedy for a loss incurred through no fault of their own."); *Rauch v. American Family Ins. Co., supra* note 46 at 482 ("We conclude that the principal purpose underlying the rule of section 632.32(6)(b), Stats. prohibiting exclusion of certain classes of people from insurance coverage is protection of third parties. It is evident that that purpose would be frustrated if innocent third parties were denied recovery because of misrepresentations made by the named insured on the application for insur-

ance. We conclude therefore that section 632.32(6)(b), Stats. gives third parties rights in liability insurance contracts which are not dependent on the validity of the contract between the insurer and the named insured. The plaintiffs in this case can recover against American Family notwithstanding the misrepresentations made by ... [the insured] in the application for insurance."); *Ferguson v. Employers Mut. Cas. Co., supra* note 46(applying North Carolina's Assigned Risk Plan) ("The primary purpose of compulsory motor vehicle liability insurance is to compensate innocent victims who have been injured by the negligence of financially irresponsible motorists. Its purpose is not like that of ordinary liability insurance to save harmless the tortfeasor himself. The injured person's rights against the insurer are not derived through the insured as in the case of voluntary insurance. They are statutory and become absolute on the occurrence of an injury covered by the policy.").

**48.** The terms of 12 O.S. Supp.1995 § 1190 (B)(1) are:

"In the case of the trial of any issue between the judgment creditor and any garnishee, costs shall be awarded to the plaintiff and against the garnishee, in addition to the garnishee's liability, if the judgment creditor recovered more than the garnishee admitted by the garnishee's answer; ... The costs shall include a reasonable attorney's fee to be taxed in favor of the prevailing party."

**49.** 1993 OK 112, 867 P.2d 438.

**50.** The terms of Title 12, Supp.1998, Ch. 15, App. 1, Rule 1.36, Rules of the Supreme Court prohibit the filing of appellate briefs in an accelerated appeal of a summary judgment, limiting the record to the instruments, including briefs, filed in the trial court. An exception is made where an appellate court requests briefs on application of a party or *sua sponte* in connection with an amended petition in error.

of the counsel-fee and-costs award as resting on its claim that it was reversible error for the trial court to give Harkrider prevailing party status.[51]

¶ 25 Ancillary orders that are dependent upon the viability of an underlying judgment (and are not otherwise challenged on their own merits) are nullified or affirmed on appeal by the disposition of the judgment on which they rest.[52] An attorney's fee and costs award, based upon the prevailing party status of one of the litigants, is dependent postjudgment relief, and is inexorably tied to the fate of the judgment creating the successful litigant's prevailing party status. Having reinstated on certiorari the nisi prius judgment upon which Harkrider's attorney's fee and costs award is based, we must now affirm the trial court's grant to Harkrider of a counsel fee and costs.

## VI

## SUMMARY

¶ 26 The interest of the state in the maintenance of continuous liability coverage on all registered vehicles transforms what would otherwise be a purely private contract between the insured and the insurer into a quasi-public obligation under which the rights of the parties are restricted by the public interest embodied in the statutory provisions requiring automobile liability insurance. On the basis of this public policy, we hold that a compulsory automobile liability insurance policy may not be avoided or disaffirmed after the occurrence of an accident giving rise to liability under the policy so as to adversely affect the ability of an innocent third party to obtain the proceeds of the policy. The trial court's summary judgment in favor of Harkrider is hence affirmed as is its award to the victor of an attorney's fee and costs.[53]

¶ 27 COURT OF CIVIL APPEALS' OPINION IS VACATED; JUDGMENT OF TRIAL COURT IS AFFIRMED

¶ 28 SUMMERS, C.J., and HARGRAVE, V.C.J., and KAUGER, WATT, and BOUDREAU, JJ., concur;

¶ 29 HODGES and LAVENDER, JJ., concur in result;

¶ 30 WINCHESTER, J., dissents.

---

51. By order of March 11, 1999, the trial court awarded Harkrider an attorney's fee of $3600 and costs totaling $55.75. The court noted that the parties stipulated to the amounts as reasonable and as due to Harkrider as the prevailing party.

52. *Thompson v. Independent School Dist. No. 94 of Garfield County*, 1994 OK 139, ¶ 6, 886 P.2d 996, 998 (holding that an attorney's fee award was "automatically vacated once the underlying judgment upon which it had been based was reversed."). *Accord, Bergstrom v. Bergstrom*, 320 N.W.2d 119 (N.D.1982).

53. Because today's pronouncement affirms the trial court's summary judgment for Harkrider on the basis of the public policy underlying compulsory automobile liability insurance, we need not decide whether the provisions of 47 O.S. Supp. 1995 § 7–324 (f)(1), cited by both Harkrider and amicus curiae, apply to a policy obtained in compliance with the Act's article on compulsory liability insurance. That section provides:

"The liability of the insurance carrier with respect to the insurance required by this title shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy."