2010 OK CIV APP 76

**Terry L. YOUNG, Trustee of the Young Revocable Living Trust, Plaintiff/Appellant,**

v.

**Leslie Joe CHAPPELL and Judith Ott Chappell, Defendants/Appellees.**

**No. 106,990.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 25, 2010.

David Youngblood, Atoka, OK, for Plaintiff/Appellant.

Warren Gotcher, Gotcher and Beaver, McAlester, OK, for Defendants/Appellees.

WM. C. HETHERINGTON, JR., Judge.

¶1 Appellant (Young) appeals a non-jury trial judgment for Appellees (Chappells) finding a certain contract void. We AFFIRM but do not find the contract void.

## FACTS

¶2 Chappells purchased a farm from Young and by the time of closing, two issues had arisen that were resolved at or near the time of closing. First, there were 900 round bales of hay still on the farm that Young wanted Chappells to buy and Chappells agreed.[1] Second, Chappells discovered that Young had sold an oil and gas pipeline easement across the land for $9,200.00 after Chappells had agreed to buy the farm but before closing. The parties agreed to resolve these issues allowing Young to receive $2,200 and Chappells $7,000 of the pipeline easement proceeds. The agreement also allowed Chappells to purchase from Young the 900 round bales of hay at $30 per bale with Young to deduct the $7,000 for the pipeline

---

1. The record is not really clear as to initially whether Young wanted to sell the hay or Chappells wanted to buy the hay.

easement from the hay sale proceeds of $27,000.

¶ 3 At the parties' request, the abstract closing company prepared a written contract memorializing their understanding which was faxed to Chappells and ultimately signed by both. Handwritten in the middle of the agreement at the request of Chappells was the following: "This contract is subject to a count and physical inspection by the Buyer." This interlineation was initialed by both parties. Contained in the typed portion of the agreement were terms requiring the *transaction* to take place within 30 days of execution. The sale closed with Young to vacate the property sixty days after closing.

¶ 4 Young testified that the Chappells came out to inspect the hay and count, "a little after that 30 days." At that time, the Chappells rejected the hay and refused to pay for it. Young sued the Chappells for breach of contract, seeking a $27,000 judgment, but at trial, claimed payment for the 900 bales of hay at $30 per bale, less the $7,000 credit for the easement. Chappells counterclaimed, asking for injunctive relief to direct Young to remove the hay, damages of $7,000 "pre-paid" (sic) to Young on the hay, further damages for replacement hay and finally for fraudulent misrepresentation regarding the quality of the hay inducing Chappells to close the land sale allowing Young to keep the hay prepayment.

¶ 5 At trial, Chappell testified regarding the thirty day inspection term that Young was still living on the property and they tried to get together several times. They each had things going on and they couldn't get together "because of one thing or another." There was no testimony given that either party objected to the inspection being a few days late or that Young was still on the property until after the hay was rejected and litigation began. Upon inspection, Chappells' position was the hay was not as represented. He testified that a lot of the hay was not "this year's hay", it was older and there were different sized bales showing weather that had been there a long time. He further testified that he unrolled some hay and discovered there was hardly any Bermuda and "it was about all Bahia and Dallis." Chap-

pells were unhappy with the apparent misrepresentation claiming the hay was put up damp and was not the quality of feed he expected as a lot was not Bermuda. Chappells offered the testimony of the real estate agent involved who testified he believed the sale would not have closed had an agreement as to the easement and the hay not been reached, and that Chappells' right to inspect the hay for count and quality was important to the sale.

¶ 6 At the conclusion of the trial, journal entry of judgment was entered April 8, 2009 granting judgment to the Chappells and against Young, expressly finding the contract to be "void" with both parties ordered to pay their own attorneys fees and Young ordered to remove the hay from Chappells' property. The trial court decreed by record findings from the bench that the contract term allowed Chappells to count the bales and inspect the hay to see if it was satisfactory. The court further ruled from the bench, "There's not going to be any judgments, any money judgments for either party. The contract or whatever the evidence was concerning that easement doesn't have anything to do with it. The seven thousand dollar credit had to do with the sale of the hay, when the sale of the hay goes down the tubes so does the seven thousand dollar credit." The trial court further ordered from the bench as a part of the judgment, the hay needed to be removed within ten days. Young's appeal followed. Chappells did not appeal any trial court rulings, particularly as it relates to his $7,000 hay prepayment.

### STANDARD OF REVIEW

¶ 7 The findings of a trial court sitting without a jury in a case of legal cognizance are to be given on review the same weight as that which would be accorded the verdict of a well-instructed jury. *Sides v. John Cordes, Inc.,* 1999 OK 36, ¶ 16, 981 P.2d 301, 307. If there is any evidence tending to support the findings and judgment of the trial court at a bench trial of a law case, the findings and judgment will not be disturbed, even if the record might support a contrary conclusion. *Id.* The credibility of witnesses and the effect of and weight given to their

testimony, as well as the resolution of conflicting or inconsistent testimony, are questions of fact to be determined by the trier. *Id.*

### ANALYSIS

■ ¶ 8 On appeal, Young argues the contract is not void and is enforceable. An enforceable contract requires the parties' "mutual consent, or a meeting of the minds" on all the essential terms of the contract. *Beck v. Reynolds,* 1995 OK 83, ¶ 11, 903 P.2d 317, 319; 15 O.S.2001 §§ 2 and 66. It is clear from the evidence this contract was drafted at the request of the parties to resolve issues that would allow the sale of the land to close. The interlineation sentence, "This contract is subject to a count and physical inspection by Buyer," was unclear as to the party's intentions and the trial court interpreted this term by considering competent extrinsic evidence. The evidence at trial supports a reasonable inference that resolution of the hay and easement issue was critical to both parties to close the sale and both signed this agreement and initialed the interlineation. Competent evidence supports the trial court's interpretation that if the hay did not meet the standards of quality and type as represented, it could be rejected. There were no qualifying terms. Any other interpretation would mean the interlineation term had no meaning. Therefore, Young agreed to this contract term to induce Chappells to close the sale. Chappells had the right to inspect, count and reject the hay.

■ ¶ 9 However, we agree this contract was not "void." "A contract procured through misrepresentation can be either void or voidable, *depending on the nature of the misrepresentation.*" *Harkrider v. Posey,* 2000 OK 94, ¶ 11, 24 P.3d 821, 826. Where a contract is entered into on the basis of a misrepresentation which deceives one of the parties as to the true nature of the proposed agreement, the purported contract is rendered *void. Id.,* 24 P.3d at 826–827. No legal rights are created and either (or any) party may ignore the purported contract at his pleasure, to the extent it remains executory. *Id.* On the other hand, where a contract is entered into on the basis of a mis-representation which goes to the contract's *inducement,* as a notion distinct from its nature, a tainted agreement is rendered merely *voidable.* Fraud in the inducement is defined as a

misrepresentation as to the terms, quality or other aspects of a contractual relation, venture or other transaction that leads a person to agree to enter into the transaction with a false impression or understanding of the risk, duties or obligation she has undertaken. *Id.*

A contract voidable for fraud in the inducement creates a valid contractual relationship, which subsists in contemplation of law until the parties are relieved of their obligation by a decree of rescission. *Id.*

¶ 10 Competent evidence supports the trial court finding Young agreed to the unqualified interlineation term making certain representations to Chappells as to number, type and quality of the hay to induce closing of the land sale. Based on this evidence and *Harkrider,* the parties' contract was not void and is enforceable. *Benham v. Keller,* 1983 OK 68, ¶ 5, 673 P.2d 152, 154.

AFFIRMED.

BUETTNER, P.J., and HANSEN, J., concur.